IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| PETER MAKUSI OTEMBA OWUOR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:12cv166-WKW |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the court on a motion by Peter Makusi Otemba Owuor
("Owuor") to vacate, set aside, or correct sentence under 28 U.S.C. § 2255.  Doc. No. 1.[1]

## I.  INTRODUCTION

On June 26, 2009, a jury found Owuor guilty of falsely representing himself to be a
United States citizen, in violation of 18 U.S.C. § 911, and making false statements, in
violation of 18 U.S.C. § 1001(a)(2).  On February 9, 2010, the district court sentenced Owuor
to 10 months in prison followed by one year of supervised release.  Owuor appealed to the
Eleventh Circuit, arguing that the district court erred (1) by denying his motions to suppress
his statements to Immigration and Customs Enforcement ("ICE") agents and to dismiss the
indictment, and (2) by giving an *Allen* charge to the jury after it announced it was

---

[1] References to document numbers are those assigned by the Clerk in the instant civil action
and are cited as "Doc. No. _ at _."  All page references are to those assigned by CM/ECF.
References to the trial transcript are to Doc. Nos. 113 and 114 in Owuor's criminal proceeding, Case
No. 2:08cr149-WKW, and are cited as "Tr., Vol. I at _" or "Tr., Vol. II at _."  References to exhibits
("Ex.") are to exhibits filed by the Government with its response, Doc. No. 17.

deadlocked. On September 24, 2010, the Eleventh Circuit affirmed Owuor's convictions and sentence. *United States v. Owuor*, 397 Fed. App'x 572 (11th Cir. 2010). Owuor petitioned the United States Supreme Court for a writ of certiorari, which that court denied on February 22, 2011. *Owuor v. United States*, 131 S.Ct. 1522 (2011) (No. 10-8232).

On February 17, 2012, Owuor, proceeding *pro se*, filed this motion under 28 U.S.C. § 2255 asserting the following as grounds for relief:

1.     ICE Agent Blake Diamond committed perjury during the pretrial hearing on Owuor's motions to suppress his statements and dismiss the indictment.

2.     The government improperly gained knowledge of Owuor's defense strategy through documents taken from his jail cell.

3.     The government withheld exculpatory videotape evidence.

4.     The government improperly introduced hearsay evidence in an arrest report.

5.     Owuor's convictions for both falsely representing himself to be a United States citizen and making false statements violated the Double Jeopardy Clause.

6.     Owuor's trial counsel rendered ineffective assistance by –

      (a)     failing to pursue a defense of "vindictive prosecution";

      (b)     failing to investigate and discover Agent Diamond's perjury and failing to use evidence to impeach the trial testimony of government witnesses;

      (c)     failing to argue the government improperly gained knowledge of the defense's strategy through

2

documents taken from Owuor's jail cell;

    (d)    failing to introduce exculpatory videotape evidence of the circumstances of Owuor's arrest and failing to challenge the government's failure to disclose this exculpatory evidence;

    (e)    informing the jury during closing argument that Owuor was in the United States illegally;

    (f)    failing to object to the admission of hearsay evidence in an arrest report; and

    (g)    failing to timely object to the jury selection process.

7.    Owuor's appellate counsel rendered ineffective assistance by –

    (a)    failing to argue on appeal that the district court erred in refusing his proposed theory-of-defense jury instruction; and

    (b)    failing to raise claims on appeal based on all the objections raised at trial.

Doc. No. 1 at 4-59.[2]

After consideration of Owuor's § 2255 motion, the submissions supporting and opposing the motion, and the record, the court concludes that an evidentiary hearing is not required and that, under Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, the § 2255 motion should be denied.

## II. DISCUSSION

---

[2] The claims in Owuor's motion overlap and are repetitive in places. For organizational and analytical purposes, the court has recast some of his claims in a more appropriate presentation.

**A.      General Standard of Review**

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited.  A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

**B.      Substantive Claims Not Raised on Direct Appeal**

Owuor's § 2255 motion includes the following substantive claims not raised on direct appeal:

- ICE Agent Blake Diamond committed perjury during the pretrial hearing on Owuor's motions to suppress his statements and dismiss the indictment.

- The government improperly gained knowledge of Owuor's defense strategy through documents taken from his jail cell.

- The government withheld exculpatory videotape evidence.

- The government improperly introduced hearsay evidence in a

4

police report;

• Owuor's convictions for both falsely representing himself to be a United States citizen and making false statements violated the Double Jeopardy Clause.

Ordinarily, if an available claim is not advanced on direct appeal, it is procedurally barred in a § 2255 proceeding. *See Mills v. United States*, 36 F.3d 1052, 1055-56 (11th Cir. 1994); *Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989). A defendant can avoid a procedural bar by demonstrating "cause" for not raising the claim of error on direct appeal and actual prejudice from the alleged error. *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004).

Owuor suggests the failure of his trial and appellate counsel to raise a double jeopardy claim constitutes ineffective assistance (Doc. No. 1 at 59) and is "cause" excusing a procedural default of this substantive claim. Ineffective assistance of counsel may satisfy the cause exception to a procedural bar, if the claim of ineffective assistance is meritorious. *Greene*, 880 F.2d at 1305. Owuor also presents independent claims of ineffective assistance of counsel premised on each of his remaining substantive claims noted above. The court will therefore consider all of Owuor's substantive claims in the context of his allegations of ineffective assistance of counsel.

## C.      **Ineffective Assistance of Counsel**

### 1.      *Strickland Standard*

A claim of ineffective assistance of counsel must be evaluated against the two-part

test announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  *Id*. at 689.  Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable.  *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted).  The court will "avoid second-guessing counsel's performance:  It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance."  *Id*. (internal quotation marks and brackets omitted).  "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one."  *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"  *Strickland*, 466 U.S. at 694.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*.  The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.  *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)

6

("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

A criminal defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Ineffective assistance of appellate counsel may be shown if the movant can "establish ... that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.... Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

The Supreme Court has held a criminal defendant's appellate counsel is not required to raise all nonfrivolous issues on appeal. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). The Court noted, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue

if possible, or at most on a few key issues." *Id*. at 751-52.  Therefore, it is difficult for a defendant to show his counsel was ineffective for failing to raise certain issues on appeal, particularly if counsel presented other strong issues. *Smith v. Robbins*, 528 U.S. 259, 287-88 (2000).

### 2.   *Claims Against Trial Counsel*

#### (a)   Failure to pursue defense of "vindictive prosecution"

Owuor contends his trial counsel was ineffective for failing to pursue a defense of "vindictive prosecution" based on the theory that criminal charges were brought against him in retaliation for his filing of an administrative claim under the Federal Torts Claim Act alleging that senior ICE special agents Blake Diamond and David Henderson negligently injured him during an altercation that took place after was questioned by the two agents at the Montgomery City Jail.  *See* Doc. No. 1 at 20, 22-24.  According to Owuor, he is completely innocent of the charges he was convicted of, and Agents Diamond and Henderson fabricated those charges once they learned they were named in his tort claim.  *Id*.  He maintains he urged his counsel to use a "vindictive prosecution" defense and that had counsel heeded his instruction, the outcome of the proceedings would have been favorable to him. *Id*.

Strategic choices of counsel made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984).  "Even if in retrospect the strategy to pursue one line of defense

over another appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1145 (11th Cir. 1983); *see also United States v. DiTommaso*, 817 F.2d 201, 215 (2d Cir. 1987) (reviewing courts are "not [to] second-guess trial counsel's defense strategy simply because the chosen strategy has failed"). Accordingly, tactical or strategic choices by counsel generally cannot support a collateral claim of ineffective assistance. *United States v. Costa*, 691 F.2d 1358, 1364 (11th Cir. 1982); *Coco v. United States*, 569 F.2d 367, 371 (5th Cir. 1978).

In an affidavit filed with this court, attorney Kevin L. Butler, Owuor's lead counsel at trial and on appeal, states:

> After thoroughly investigating this case, analyzing all facts, consulting with Mr. Owuor, and reviewing applicable law and procedure, I determined what strategy would be most effective and should be pursued. This strategy included attacking the credibility of the law enforcement agents involved in this case. However, I made the tactical decision not to rely solely upon a defense at trial which was grounded in the alleged perjury of Agent Diamond in a pretrial proceeding] set forth by Mr. Owuor in this claim.
>
> ....
>
> ... I made the tactical and reasoned determination of (1) what defense strategy to pursue, (2) what evidence should be presented/challenged, and (3) what arguments should be made. These determinations were made based upon my over 15 years of experience conducting federal criminal trials and what I determined would be the most effective defense/strategy. I then zealously represented Mr. Owuor and zealously presented my defense.

Doc. No. 10 at 2-3.

Although Owuor's counsel did not use the term "vindictive prosecution" in arguing

to the jury, his counsel elicited evidence of the Federal Tort Claim complaint in an attempt to impeach the credibility of the government's witnesses, Agents Diamond and Henderson. Tr., Vol. II at 49-50. Moreover, during closing argument, attorney John D. Keller, who served as second-chair counsel for Owuor at trial, specifically referred to Owuor's tort claim against Diamond and Henderson as a factor that biased the agents against his client:

> The agents have been working to build a case against Mr. Owuor surely not every day, but in some capacity over the entire last year. Mr. Owuor has become a project that they want to see through. He may have become an example that they wanted to make for others. Not only would this individual not talk to them when they were trying to interrogate him, not only did he resist being fingerprinted, but then he had the audacity to turn around and file a federal claim against them. You think that sat well with those agents?

Tr., Vol. II at 82.

During cross-examination of Agents Diamond and Henderson (and during closing argument), Owuor's counsel vigorously sought to impeach the two agents by suggesting their testimony against Owuor was motivated by animus toward him because he was a foreign national who had refused to cooperate with them when they attempted to question him regarding his citizenship and immigration status. This line of defense was not so "patently unreasonable that no competent attorney would have chosen it." *Adams*, 709 F.2d at 1145. As suggested above, in pursuing this line of defense, Owuor's counsel did not completely eschew the tactic of arguing to the jury that Owuor's tort claim against Diamond and Henderson furnished a motive for the two witnesses to make spurious allegations against Owuor. Consequently, Owuor fails to demonstrate deficient performance by his trial

10

counsel.  Nor does he demonstrate that a defense more dedicated to his theory of a vindictive prosecution was reasonably likely to have changed the outcome of the proceeding.  Owuor is not entitled to any relief based on this claim.

     (b)     <u>Failure to investigate and discover perjury of Agent Diamond</u>

Owuor next argues his trial counsel rendered ineffective assistance by failing to investigate and discover Agent Diamond's alleged perjury during a pretrial proceeding and by failing to use this and other evidence to impeach the trial testimony of the government's witnesses.  *See* Doc. No. 1 at 4-14, 24-30, 32-33.

Owuor maintains that at the December 15, 2008, evidentiary hearing on his motions to suppress his May 23, 2008, statements to Agents Diamond and Henderson (which formed the basis of the criminal charges against him) and to dismiss the indictment based on the agents' "outrageous" misconduct during and after their attempt to question him, Agent Diamond perjured himself by denying he received notice of Owuor's federal tort claim when it was served at the Montgomery office of the U.S. Department of Homeland Security on July 14, 2008.  Owuor contends that, had his counsel investigated, he would have discovered Agent Diamond's "perjury," which counsel could then have used to impeach Diamond at trial, and specifically to show (as support for a "vindictive prosecution" theory) that Diamond filed the criminal complaint against Owuor, on July 15, 2008, only after learning of the tort

claim action.[3]

At the pretrial hearing, Agent Diamond testified he first learned of the tort claim action on July 16, 2008 – the day after he filed the criminal complaint against Owuor – when, while assisting in moving Owuor's belongings from the city jail to federal custody, he saw a document prepared by the attorney Owuor had retained for the civil case indicating that Owuor had filed a federal tort claim based on the conduct of Agents Diamond and Henderson.  Ex. 5 at 25, 27.

Owuor argues that because Agents Diamond and Henderson were the only two ICE agents assigned to the Montgomery office for Homeland Security in 2008, Diamond necessarily must have received notice of Owuor's tort claim when it was served at the Homeland Security office on July 14, 2008.  *See* Doc. No. 22 at 9.  However, that Agents Diamond and Henderson were the only ICE agents assigned to the Montgomery office at the time does not preclude the possibility, or even the likelihood, that some other employee of the office received the actual notice of Owuor's tort claim action on the date it was served. Owuor presents no evidence that Agent Diamond signed for or received actual notice of the tort claim on July 14, 2008, but instead merely speculates that he "must have."[4]  Therefore, Owuor does not establish that Agent Diamond perjured himself at the pretrial hearing.

---

[3] The same attorney who cross-examined Diamond at the pretrial hearing, Mr. Butler, cross-examined the government's witnesses at trial.

[4] A claim under the Federal Torts Claim Act may only be brought against the United States, and individual employees of the United States may not be named defendants.  *See* 28 U.S.C. § 2679(b)(1) and (d)(1)..

Because Owuor fails to establish perjury by Agent Diamond, he cannot show that his trial counsel was ineffective for failing to investigate, discover, and use this "perjury" to impeach Agent Diamond at trial.  Moreover, while Owuor's counsel did not seek to make hay over Agent Diamond's prior testimony regarding when and how he learned of the tort claim action, counsel conducted rigorous cross-examination of both Agent Diamond and Agent Henderson intended to suggest that the two agents were untruthful in their testimony regarding their allegations against Owuor.  As previously noted, Owuor's counsel also presented evidence of Owuor's tort claim action and argued to the jury it provided a motive for Agents Diamond and Henderson to be biased against Owuor.

Because Owuor fails to demonstrate deficient performance by his counsel or resulting prejudice, he is not entitled to any relief based on this claim.

> (c)     Failure to object to seizure of documents
>          concerning defense strategy

Owuor argues that his trial counsel rendered ineffective assistance by failing to argue the government improperly gained knowledge of the defense's strategy through documents taken from his jail cell by Agent Diamond.  *See* Doc. No. 1 at 15-18.

As noted above, Agent Diamond testified at the pretrial hearing he first learned of Owuor's tort claim action when, while assisting in moving Owuor's belongings from the city jail to federal custody (after the federal complaint was filed against Owuor), he saw a document prepared by the attorney Owuor had retained for the civil case indicating that Owuor had filed a federal tort claim based on conduct by Agents Diamond and Henderson.

13

Ex. 5 at 25, 27.

Owuor's trial counsel Kevin Butler addresses Owuor's claim:

Mr. Owuor asserts I was ineffective for failing to adequately challenge: (i) the theft of his personal papers by law enforcement and (ii) the government's use of these stolen documents in their trial preparation. I have never been presented with evidence supporting Mr. Owuor's assertion that his legal/personal documents were improperly seized by the government during the course of pretrial proceedings and used by the government in its case preparation. The trial strategy I elected to pursue was based upon my case investigation, information obtained as a result of that investigation and the discovery provided. Furthermore, all the facts and issues Mr. Owuor indicates the government obtained as a result of the theft of his personal documents were raised in necessary pretrial and trial pleadings filed by the defense, arguments and evidence presented during pretrial hearings by the defense, and arguments and evidence presented by the defense during trial.

Doc. No. 10 at 2-3.

Agent Diamond's pertinent testimony at the pretrial evidentiary hearing indicated only that he learned of Owuor's federal tort claim action from a document he saw while he assisted in moving Owuor's belongings from the city jail to federal custody. There is no evidence that the government obtained knowledge of the defense's strategy in Owuor's criminal case through documents seen by Agent Diamond. Owuor fails to show that his counsel performed deficiently by failing to raise such an allegation or that he was prejudiced as a result. Therefore, he is not entitled to relief based on this claim of ineffective assistance of counsel.

      (d)    <u>Failure to introduce exculpatory videotape evidence and to challenge non-disclosure of such evidence</u>

14

Owuor next argues his counsel was ineffective for failing to introduce exculpatory videotape evidence of the circumstances of his arrest and for failing to challenge the government's failure to disclose this exculpatory evidence. *See* Doc. No. 1 at 34-42.

Addressing this claim, attorney Butler states:

Mr. Owuor asserts I was ineffective for failing to challenge at trial and on appeal the prosecution's failure to disclose exculpatory and impeachment evidence. Specifically, Mr. Owuor alleges the government improperly withheld exculpatory videotape evidence. It is my belief the prosecution provided all discoverable and exculpatory information in their [possession]. Therefore I did not raise this issue at trial or on appeal.

Doc. No. 10 at 3.

In making this claim, Owuor asserts that videotape evidence of the booking area in the Montgomery City Jail on the date of the offense would have been exculpatory. However, he was charged with making false statements in an interview room at the jail (away from the booking area), where only he and Agents Diamond and Henderson were present. There was no video or audio of the agents' questioning of Owuor. Because Owuor fails to demonstrate that exculpatory videotape evidence existed, he cannot show that his trial counsel rendered ineffective assistance by failing to introduce such evidence or by failing to challenge the government's failure to disclose such evidence. He is not entitled to relief based on this claim.[5]

     (e)    <u>Informing jury Owuor was in United States</u>

---

[5] To the extent Owuor may assert that his counsel was ineffective for failing to raise this issue on appeal, he likewise is entitled to no relief – for the same reasons he is entitled to no relief based on his trial counsel's performance.

> illegally

Owuor argues that his trial counsel rendered ineffective assistance by informing the jury during closing argument that Owuor was in the United States illegally.  *See* Doc. No. 1 at 21, 44-46.

Co-counsel Keller, who presented closing arguments for Owuor, addresses this claim in an affidavit filed with the court:

> Owuor also alleges in his § 2255 motion that the undersigned incriminated him repeatedly by telling the jury that Owuor came in the United States illegally.  But the statement to which Owuor refers is a statement made while invoking the perspective and bias of the ICE agents who had testified against Owuor.  See Volume II of Jury Trial at II-84, Owuor, No.2:08-cr-149, ECF No. 114 ("'So what are we going to do to see this thing through?  What are we going to do to do what it takes?  How are we going to do what's necessary to make sure that this individual is punished not only for coming into our country illegally, not only for refusing to cooperate with us, but for turning around and trying to sue us for doing our jobs?  How are we going to see this thing through?  Well, there was a period of time when we were in the interview room alone with him.'  No other witnesses were there.  There was no videotape going.  The only people that can tell the jury about what happened in that interview room, the only witnesses, are those two agents whose job it is to see this thing through.  Did they do it?  Did they convince you?  They gave it their best shot.  Did they prove Mr. Owuor was guilty beyond a reasonable doubt of these crimes based on solely their uncorroborated testimony?").  I was not endorsing the agents' views of Owuor's status or his actions. I was intentionally and strategically summarizing their perspective in the first person and I was implicitly questioning their views and credibility.
>
> Further, the Court had previously denied the defendant's motion in limine to exclude reference to Owuor's immigration/legal status.  See Oral Order Denying Motion in Limine No. 66, Owuor, No. 2:08-cr-149, ECF No. ___ (No docket number but immediately following No. 86).  And Special Agent Diamond had already testified on direct that he had information indicating that Owuor had not entered the country legally.  See Volume I of Jury Trial at

16

> I-116, Owuor, No. 2:08-cr-149, ECF No. 113.  My statement in closing was
> a recitation of Agent Diamond's testimony and biased perspective offered to
> illustrate his motive to get Owuor convicted.

Doc. No. 5 at 2-3.

At the time of the instant offense, because he was an overstay in the United States,

Owuor was in the country illegally.  In denying the defense's motion in limine to keep such

matters out of evidence, the district court ruled that evidence of Owuor's immigration status

was relevant to the charges against him (for instance, it provided an arguable motive for him

to lie to the ICE agents).  Tr., Vol. I at 4.  Through Agent Diamond's testimony, the

government introduced evidence indicating Owuor was unlawfully in the United States.

Attorney Keller's attempt during closing argument to suggest Owuor's immigration status

biased Agents Diamond and Henderson against Owuor, motivating them " to make sure that

this individual is punished," was not a professionally unreasonable tactic.  Nor can this court

say Keller's attempt to make the best of bad facts was prejudicial to Owuor.  Therefore,

Owuor is not entitled to any relief based on this claim of ineffective assistance of counsel.

(f)    Failure to object to hearsay evidence

Owuor maintains his trial counsel was ineffective for failing to object to the admission

of hearsay evidence in an arrest report indicating Owuor told law enforcement officers he

was from Atlanta.  *See* Doc. No. 1 at 47-55.

Attorney Butler addresses this claim in his affidavit:

> In Mr. Owuor's sixth claim, he asserts I was ineffective for allowing, and
> failing to object to information in a police report.  Specifically, the information

in a police report that indicated Mr. Owuor informed law enforcement he was from Atlanta. Prior to and during trial, I objected to and attempted to exclude evidence I felt should not be presented to the Court or the jury. In this case, I do not believe there was any evidentiary or legal grounds to exclude law enforcement witnesses from testifying to inculpatory statements allegedly made by Mr. Owuor and which Mr. Owuor now claims I should have had excluded. However, I did attempt to impeach law enforcement witnesses and challenge their credibility.

Doc. No. 10 at 4.

Agent Henderson testified he filled in the portion of the arrest report reflecting Owuor's (incorrect) Social Security number and his (incorrect) place of birth as Atlanta based on what Owuor told him. Tr., Vol. I at 101-05. This information on the arrest report corroborated the testimony of Agents Henderson and Diamond that Owuor falsely told them he was from Atlanta. Owuor does not demonstrate how admission of the arrest report was improper or how he was prejudiced by its admission. Therefore, he is not entitled to relief based on this claim of ineffective assistance of counsel.

(g)   Failure to timely challenge jury selection process

Owuor contends his trial counsel rendered ineffective assistance by failing to timely object to the jury selection process. *See* Doc. No. 1 at 57-58.

Owuor's trial counsel challenged the composition of the jury venire based on the jury selection process. Although this court ruled that the challenge was untimely, the court also fully addressed the merits of this claim and concluded that the claim, regardless of the timeliness of the challenge, would fail on its merits. Exs. 6 and 10. Owuor does not attempt to demonstrate any error in this court's finding that the challenge to the jury selection process

18

lacked merit.  Therefore, he fails to demonstrate that he was prejudiced by his counsel's untimely challenge.  He is not entitled to any relief based on this claim of ineffective assistance of counsel.

### 3.    *Claims Against Appellate Counsel*

#### (a)    Failure to raise double jeopardy claim

Owuor maintains his counsel rendered ineffective assistance on appeal by failing to argue that his convictions for both falsely representing himself to be a United States citizen in violation of 18 U.S.C. § 911 and making false statements in violation of 18 U.S.C. § 1001(a)(2) arose out of the same transaction and violated the Double Jeopardy Clause. *See* Doc. No. 1 at 59-60.

The same-elements or *Blockburger* test states that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). "If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Iannelli v. United States*, 420 U.S. 770, 785 n. 17 (1975).

To convict a defendant of making false statements in violation of 18 U.S.C. § 1001(a)(2),[6] the evidence must demonstrate the defendant (1) knowingly and willfully; (2)

---

[6] Section 1001(a)(2) states it is unlawful to knowingly and willfully  make "any materially
(continued...)

made a statement; (3) to a federal agency; (4) that was false; and (5) material.  18 U.S.C. § 1001(a)(2).  It is unnecessary to prove a material false statement to a federal agency to convict a person of a false claim of citizenship in violation of 18 U.S.C. § 911.[7]  To prove a false claim of citizenship, the prosecution must prove a false and willful misrepresentation of United States citizenship.  18 U.S.C. § 911.  This is not a necessary element of proof in a false-statement charge under § 1001(a)(2).  One could violate the statute prohibiting false statements without making a false claim of United States citizenship.  Likewise, one could make a false claim of United States citizenship without making a material false statement to a federal agency.  Applying the *Blockburger* test to the statutes Owuor was convicted of violating indicates that the conduct at which each is directed is not the same.

Further, Owuor's convictions arose from two separate statements.  His § 911 conviction was based on his statement to Agents Diamond and Henderson claiming he was a United States citizen.  His § 1001(a)(2) conviction was based on his statement to the agents claiming he was born in Atlanta.

There was no double jeopardy violation in Owuor's convictions for falsely representing himself to be a United States citizen and making false statements.  Therefore, his counsel was not ineffective for failing to raise this claim on appeal.  Counsel is not

---

[6](...continued)
false, fictitious, or fraudulent statement or representation ... in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States."  18 U.S.C. § 1001(a)(2).

[7] Section 911 states, "Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned not more than three years, or both."

ineffective for failing to argue a meritless issue. *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992).

(b)     Failure to allege error in court's refusal of proposed jury instruction

Owuor contends his counsel rendered ineffective assistance on appeal by failing to argue the district court erred in refusing his proposed theory-of-defense jury instruction. *See* Doc. No. 1 at 30-32.

Owuor's proposed theory-of-defense jury instruction was as follows:

The defense's theory of the case is that Mr. Owuor never made any false statements to ICE Agents Henderson and Diamond. ...  It is Mr. Owuor's defense that he was interrogated in the Montgomery City Jail at the agents' initiation and that when Mr. Owuor invoked his right to remain silent and refused to make any  statements to the agents, he was removed from the room. He contends that the agents physically assaulted him as a result of his refusal to answer the agents' questions.

Tr., Vol. II at 58-59.  In addition, Owuor's counsel requested that the instruction state that the charges against Ouwor were filed in retaliation. *Id*. at 58.

Although the district court refused most of this proposed instruction, it retained the first sentence of the instruction in its charge to the jury. *See* Tr., Vol. II at 60-61.  The excised portions were correctly refused by the court because they placed Owuor's desired factual findings in the court's mouth and were more in the nature of a jury argument than a jury instruction. *United States v. Paradies*, 98 F.3d 1266, 1987 (11th Cir. 1996).  Owuor's version of the facts was presented to the jury in the closing argument by his trial counsel. The instructions given by the district court fairly and adequately presented Owuor's defense

theory to the jury.  *Id*.  The district court did not err in refusing much of the proposed instruction.  Consequently, Owuor's counsel did not render ineffective assistance on appeal by failing to allege error in the district court's ruling.

(c)   <u>Failure to pursue claims based on trial objections</u>

Owuor cursorily asserts that his counsel rendered ineffective assistance by failing to raise claims on appeal based on all objections raised at trial.  *See* Doc. No. 1 at 33.  In this regard, Owuor does not point to a specific claim his counsel should have, but did not, raise on appeal.  He fails to demonstrate deficient performance by counsel, or how his counsel's performance resulted in any prejudice.  He is not entitled to relief based on this cursory assertion of attorney error.

**III.   CONCLUSION**

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Owuor be DENIED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation **on or before September 18, 2014**.  A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on

22

appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

      Done this 3rd day of September, 2014.


                /s/ Terry F. Moorer
                TERRY F. MOORER
                UNITED STATES MAGISTRATE JUDGE